IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-171-FL

| | |
|---|---|
| BOBBY D. SAVAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF CORRECTION, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on the motion (DE #27) by defendant North Carolina Department of Correction ("NCDC") to dismiss "Plaintiff's Amended Complaint" ("amendment to the complaint") (DE #24) filed by *pro se* plaintiff Bobby D. Savage ("plaintiff"). The NCDC seeks dismissal of all claims asserted in the amendment to the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.[1] Plaintiff has filed a response (DE #34) to the motion, including exhibits.[2] The motion was referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the motion be granted in part and denied in part.

---

[1] The NCDC also relies on Fed. R. Civ. P. 12(h)(3), which preserves the defense of lack of subject matter jurisdiction against waiver by requiring dismissal of an action whenever it appears that subject matter jurisdiction is lacking. The NCDC filed the instant motion within the enlarged period allowed by the court (*see* Order (DE #26)), and it is therefore timely. There do not appear to be any other circumstances implicating any notions of waiver. In the present context, reliance on Rule 12(h)(3) does not appear necessary.

[2] These exhibits consist of the two Equal Employment Opportunity Commission ("EEOC") charges by plaintiff underlying his claims and related documents.

## BACKGROUND

### Original Complaint

Plaintiff filed his original complaint ("Compl.") (DE #1) on 24 April 2004. It alleges that plaintiff was a black employee of the NCDC, whose duties were custody and control of inmates under his supervision, apparently at the Wayne Correctional Center ("Wayne CC").[3] (Compl. ¶¶ 1, 7(b)). The NCDC allegedly discriminated against plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and retaliated against him for his complaints of unfair treatment in violation of Title VII, 42 U.S.C. § 2000e-3(a), and other provisions of law. (Compl. ¶¶ 10-14).

Specifically, plaintiff alleges that he received a below good rating in November 2003 and subsequent adverse action through September 2004 after complaining about discrimination against him. (*Id.* ¶ 7(c)). In addition, plaintiff alleges that in January 2005 he was subjected to an abusive search for drugs. (*Id.* ¶ 7(d)). Plaintiff filed an EEOC charge with respect to each of these two alleged series of events, and the EEOC issued right to sue letters as to each charge, which are attached to the original complaint. (*Id.* ¶ 7(c), (d); Ex. A). In his original complaint, plaintiff sought injunctive relief, compensatory damages in excess of $10,000, and punitive damages. (*Id.* pp. 5-6). The NCDC filed an answer (DE #9) in response to the original complaint, in which it denied liability and asserted several affirmative defenses.

---

[3] Plaintiff does not appear to state in his various filings whether he is still employed with the NCDC. The NCDC states in its memorandum (DE #28) supporting the instant motion that plaintiff is a former employee. (Def.'s Mem. (DE #28), p. 1). Plaintiff also does not appear to allege expressly Wayne CC as his place of employment, but other documents in the record indicate that as the location during the periods in issue. (*See, e.g.*, the affidavits included in plaintiff's EEOC charges attached to his response to the dismissal motion).

2

## Amendment to the Complaint

On 30 November 2006, plaintiff filed a motion for amendment of the original complaint (DE #12). The court allowed the motion (Order (DE #22)), and plaintiff timely filed "Plaintiff's Amended Complaint" (that is, the amendment to the complaint) on 18 January 2007. As indicated above and as discussed further below, it is this filing which is the subject of the instant motion to dismiss.

The amendment to the complaint purports to assert the following causes of action against the NCDC: (1) a claim under 42 U.S.C. § 1983 ("§ 1983") for violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (Am. to Compl. ¶¶ 1, 16-18); (2) a claim under 42 U.S.C. § 1985(3) and § 1986 ("§ 1985(3)" and "§ 1986," respectively) for conspiracy to violate his civil rights (id. ¶¶ 1, 22);[4] and (3) state law claims for fraud, forgery, bad faith, malice, willful misconduct, intentional infliction of emotional distress ("intentional infliction"), and gross negligence (id. ¶¶ 19-20, 24).[5] These claims are stated in conclusory fashion, without detailed factual allegations, and they are interspersed with legal argument addressing defenses raised by defendant in its answer to the original complaint. Attached to the amendment to the complaint are a 13 July 2004 letter to plaintiff from the Wayne CC Superintendent and a blank critical job functions form, dated the same date, purportedly from a Dr. Pages to a Dr. Le, both of which

---

[4] Plaintiff actually cites to § 1985(c), but there is no such subsection to § 1985. It is otherwise apparent that he intends to cite to § 1985(3). Section 1985(3) provides a private right of action for conspiracy to deprive one of his right to equal protection of the laws. Section 1985(1) deals with a conspiracy to prevent "any person from accepting or holding any office, trust, or place of confidence under the United States." Plaintiff, as a state corrections officer, clearly does not fall under this category. Similarly, there are no facts suggesting plaintiff's claim falls under § 1985(2) as a "conspir[acy] to deter, by force, intimidation, or threat, any party or witness in any court of the United States."

[5] Although plaintiff does not expressly identify his claims for fraud, forgery, bad faith, malice, willful conduct, intentional infliction, and gross negligence as state law claims, the court believes they are most meaningfully evaluated as such in the present context. The court has, however, also considered them as alleged aggravating circumstances relating to his federal statutory claims.

3

allegedly relate to plaintiff's claims for fraud and forgery, among others. Plaintiff seeks compensatory damages of $500,000 and punitive damages of $3.25 million. (*Id.* ¶ 22). There is no claim for injunctive relief in the amendment to the complaint.[6]

### Plaintiff's Motion for Joinder of Additional Defendants

On 15 February 2007, plaintiff filed a document entitled "Plaintiff's List of Joining Additional Parties" (DE #31), naming two people who plaintiff later explained had assisted him with the case (*see* DE #43). Because of the ambiguous nature of this filing, the court struck it and allowed plaintiff leave to file a new document serving the same intended purpose but conforming to the applicable rules. (Order (DE #40)). In response, on 18 June 2007, plaintiff filed a document (DE #43) bearing the same heading as before, "Plaintiff's List of Joining Additional Parties," and the additional heading "Plaintiff's Amended Complaint." This filing ("plaintiff's motion for joinder") seeks to join as defendants four NCDC employees.[7] The NCDC has moved (DE #44) to strike this filing. Plaintiff's motion to join these individuals as defendants and the NCDC's motion to strike are still pending.

### DISCUSSION

### I.  STANDARD OF REVIEW FOR RULE 12(b)(1) AND 12(b)(6) MOTIONS

Fed. R. Civ. P. 12(b)(1) provides for dismissal of an action if the court lacks subject matter jurisdiction over the action before it. A plaintiff "bears the burden of showing federal jurisdiction

---

[6] Plaintiff does request that a cease and desist order be issued preventing the NCDC's counsel from representing the NCDC (Am. to Compl. ¶ 7), but such relief is not on the substance of plaintiff's claims. In any event, the court is aware of no authority that would entitle plaintiff to assert such a challenge to the manner of the NCDC's representation in this case.

[7] Carla E. O'Konek-Smith (Wayne CC Superintendent); Joseph Lofton ( Director, Eastern Region, Division of Prisons); Boyd Bennett (Director of Prisons); and Theodis Beck ( Secretary of Correction).

4

is appropriate when challenged by the defendant" on a 12(b)(1) motion. *Bio-Medical Applications of N.C., Inc. v. Elec. Data Sys. Fayetteville, Inc.*, No. 05-135-FL, 2006 U.S. Dist. LEXIS 4398, at *4-5 (E.D.N.C. 25 Jan. 2006). The court may consider material outside the pleadings in resolving a Rule 12(b)(1) motion without converting it to a summary judgment motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[N]o presumption of truthfulness attaches to either party's claims." *Bio-Medical Applications*, 2006 U.S. Dist. LEXIS 4398, at *5. Nevertheless, a *pro se* plaintiff's complaint is to be liberally construed in deciding a Rule 12(b)(1) motion. *Seward v. Unites States*, No. J-79-2298, 1980 U.S. Dist. LEXIS 12136, at *4 (D. Md. 30 Apr. 1980) (liberality due *pro se* complaint on Rule 12(b)(6) motion is also accorded a Rule 12(b)(1) motion).

A motion under Fed. R. Civ. P. 12(b)(6) seeks dismissal on the grounds that the complaint challenged fails to state a claim upon which relief may be granted. It is well established that a Rule 12(b)(6) motion should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. Where, as here, a plaintiff is proceeding *pro se*, the complaint should be construed liberally and not dismissed summarily unless it appears beyond doubt that he can prove

5

no set of facts in support of his claim which would entitle him to relief. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Exhibits to a pleading are considered a part of it and may be considered on a Rule 12(b)(6) motion without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 10(c); *Alexander v. Sports Auth., Inc.*, No. DKC 2007-0479, 2007 U.S. Dist. LEXIS 43317, at *7-8 (D. Md. 14 June 2007); *Norfolk Federation of Business Districts v. Dep't of Housing and Urban Development*, 932 F. Supp. 730, 736 (E.D. Va.), *aff'd*, 103 F.3d 119 (1996). The court may also consider documents outside of the pleadings on a Rule 12(b)(6) motion, including exhibits to the motion, if the documents are integral to and explicitly relied on in the complaint and if the authenticity of the documents is not challenged. *See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also Cohen v. Sheehy Honda of Alexandria, Inc.*, No. 106-441, 2006 U.S. Dist. LEXIS 40621, at *3-4 (E.D. Va. 19 June 2006) (court could consider plaintiff's EEOC charge submitted with motion to dismiss where document was integral to plaintiff's complaint and plaintiff did not challenge the authenticity of the document submitted by defendant).

Under these authorities, the court has considered on the Rule 12(b)(6) motion the exhibits to the original complaint and the amendment to the complaint. Where indicated, the court has also considered the EEOC charge materials attached to plaintiff's response to the dismissal motion. The charge materials are integral to plaintiff's pleadings and explicitly relied upon in them, and their authenticity has not been challenged.

6

## II. CLAIMS AND PARTIES SUBJECT TO DISMISSAL MOTION

A threshold determination for the court is establishing which claims and parties are subject to the NCDC's motion. The claims and parties at issue are examined in turn below.

### A. Claims at Issue

The NCDC argues strenuously that the amendment to the complaint supersedes the original complaint and effects the waiver of the claims set forth in the original complaint, including plaintiff's Title VII claim. The NCDC relies on the principles that "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case" and that "if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims." *Young v. City of Mount Ranier*, 238 F.3d 567, 572, 573 (4th Cir. 2001); *see also Middlebrooks v. Univ. of Maryland*, No. 97-2473, 1999 U.S. App. LEXIS 305, slip op. at *8 (4th Cir. 11 Jan. 1999) (a superseded pleading "cannot be used to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading").

After careful consideration of the record, the court does not believe these principles are applicable to this case. Instead, the court finds that the amendment to the complaint was not intended to replace the original complaint, but rather to add to it. This intent is evident, from among other facts, the absence of detailed factual allegations in the amendment to the complaint. Plaintiff appears to assume that the detailed factual allegations in the original complaint are still a part of his case. It is clear that he is relying on the same sequence of events and conduct described in the original complaint as the factual basis for the claims in the amendment to the complaint. A comparable circumstance prevails with respect to plaintiff's motion for joinder. It is also devoid of

detailed factual allegations, even though, as indicated, it bears the dual heading "Plaintiff's Amended Complaint" and obviously relates to the same events and conduct detailed in the original complaint.

In addition, plaintiff styled his motion for amendment as a "Motion to Amend Original Complaint." In a similar vein, plaintiff uses the heading "Plaintiff's Amendment to Complaint" on the certificates of service for both the motion and the proposed pleading itself. This terminology implies that "Plaintiff's Amended Complaint" was designed to add to the original complaint and not constitute an entirely new, replacement complaint.

Moreover, in his response to the NCDC's dismissal motion, plaintiff clearly manifests the view that the allegations of the original complaint, which consists of sixteen numbered paragraphs followed by a prayer for relief, are still part of his case:

> Plaintiff's incorporation of 1-17 of the original complaint and 1-19 [page 8] of the AMENDED COMPLAINT, shows the Court the issues of Constitutional Violations, which are federal concerns that fall under this Court's jurisdiction.

(Plf.'s Resp., p. 3). In addition, as noted previously, plaintiff attached as exhibits to the response copies of his EEOC charges and related documents.

There is no question that plaintiff could have indicated more clearly his intent to add to and not waive the claims in the original complaint by expressly incorporating them by reference into amendment to the complaint or, better yet, by preparing a single consolidated amended complaint containing all his claims. However, as a *pro se* litigant, particularly one who has unsuccessfully sought counsel and appears to be striving to comply with the rules, plaintiff is entitled to some degree of leeway in matters of form. To administer the death penalty to the claims in the original complaint by finding waiver, especially at this early stage of the litigation, would be to exalt form over substance. Courts faced with similar circumstances have also declined to find waiver and

8

instead have treated amendments as supplementing the original claims asserted. *See Inkel v. Bush,* No. 3:04-69, 2004 U.S. Dist. LEXIS 21138, at *5 n.1 (D. Conn. 19 Oct. 2004) (finding that plaintiff's *pro se* status and the liberal amendment of pleadings rule warrant finding that a subsequent pleading be construed as an "amendment or supplement . . . that does not supercede the [original] complaint"); *see also Sawicki v. City of Brunswick Ohio,* No. 1:07-803, 2007 U.S. Dist. LEXIS 48634, at *1 (N.D. Ohio 5 July 2007) (holding that a *pro se* plaintiff's amended complaint should be construed as supplementing and not superceding the original complaint when "[i]t is clear from the wording").

The NCDC can claim no prejudice from the court's determination that the claims in the original complaint remain in the case. The NCDC received notice of these claims, through service of process, and it served an answer in response to these claims. In contrast, to find that plaintiff waived these claims would work a windfall for the NCDC.

Therefore, the claims presently asserted by plaintiff in this case are those set out in the original complaint as supplemented by the amendment to the complaint. These documents together should be deemed to constitute a single, amended complaint. The detailed factual allegations in the original complaint are accordingly available to support the claims asserted in the amendment to the complaint.

As indicated, the NCDC has already answered the claims in the original complaint, having chosen not to move for their dismissal at that stage. In its present motion, the NCDC again does not seek dismissal of the claims in the original complaint[8] and the case should proceed on these claims (*i.e.,* violation of Title VII and § 1981, and retaliation) irrespective of the disposition of the NCDC's

---

[8] The court makes no finding on whether or not the NCDC would have had the right to seek dismissal of the claims in the original complaint in its dismissal motion.

9

dismissal motion. Rather than focusing on the claims in the original complaint, the NCDC's motion is directed solely to the causes of action alleged in the amendment to the complaint. Again, these claims are a § 1983 claim, a claim under § 1985 and § 1986, and state law claims, all for money damages.

## B. Parties at Issue

In the amendment to the complaint, the only entity formally named as a defendant is the NCDC. The pleading does, however, refer to five individuals,[9] all employees of the NCDC purportedly involved in the events about which plaintiff is complaining. (Am. to Compl. ¶¶ 3, 8). Plaintiff appears to allege that these employees fall within the federal statutes upon which he relies and do not enjoy immunity. Moreover, plaintiff repeatedly refers to "Defendant(s)" throughout the pleading, suggesting that there is more than one defendant. As the NCDC points out in the memorandum supporting its dismissal motion (Def.'s Mem., pp. 4-5), there is a question whether these five individuals should be viewed as defendants in the amendment to the complaint.[10]

The court finds that they are not presently defendants in this case and that the only defendant at this time is the NCDC. Notwithstanding the foregoing facts, plaintiff at no time has had summonses issued for these individuals or attempted to serve process on any of them. Nor, of course, are any of the individuals formally identified as defendants. These considerations negate the notion that plaintiff intended to name these individuals as defendants in the amendment to the complaint. Moreover, it would be manifestly unfair to these individuals to treat them as defendants

---

[9] They are the four individuals listed in footnote 7 plus Travis Outlaw (Wayne CC Assistant Superintendent).

[10] Two of these individuals, Carla E. O'Konek-Smith and Travis Outlaw, are also mentioned in the original complaint (Compl. ¶ 7(c)), along with several other people. It appears indisputable that none of these persons were made defendants in the original complaint.

10

under these circumstances, which show the complete absence of notice to them of the amendment to the complaint.

Plaintiff's motion for joinder, which seeks to add additional defendants, does not lead to a contrary conclusion. It was filed well after the amendment to the complaint and names as defendants only four of the five individuals referenced in such amendment.[11]

The court need not await resolution of the joinder issue before acting on the dismissal motion because, among other reasons, the outcome on joinder should not affect the dismissability of the claims against the NCDC. Specifically, if joinder is denied, the claims against the NCDC are obviously not affected. If joinder is allowed, there would also be no effect on the claims against the NCDC, at least if dismissal is based on the principal grounds recommended herein. That is, joinder would not somehow make viable claims against the NCDC dismissed on the principal grounds recommended.[12]

## III. ANALYSIS OF PLAINTIFF'S CLAIMS

The court now turns to an analysis of each of the claims asserted by plaintiff in the amendment to the complaint against the NCDC. For the reasons stated below, the court finds that each of the claims should be dismissed.

### A. Plaintiff's § 1983 Claim

Section 1983 provides a private right of action for the violation of constitutional rights. It reads in relevant part:

---

[11] Travis Outlaw is not included in plaintiff's motion for joinder.

[12] An order allowing joinder would, of course, need to indicate to which claims the additional defendants were being joined. Such claims could conceivably include claims recommended for dismissal as to the NCDC.

11

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983 (emphasis added).

The right of action conferred by § 1983 is not unlimited. In suits for money damages, as here, neither a state nor an agency of a state is deemed a "person" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Section 1983 therefore does not provide a plaintiff the right to sue a state or an agency of the state for money damages. *Will*, 491 U.S. at 64-71.[13]

This interpretation of § 1983 is based, in part, on the Eleventh Amendment. *Will*, 491 U.S. at 66-67. It "deprives the federal courts of jurisdiction to hear actions for money damages brought against a State by its own citizens or by citizens of another state." *Sec. of the Dep't of Crime Control & Public Safety v. Blackwood*, 7 F.3d 1140, 1145 (4th Cir. 1993); *Frazier v. Murray*, No. 4:96-168-BO, 1997 U.S. Dist. LEXIS 22039, at *8-9 (E.D.N.C. 16 Dec. 1997) (holding that the "Eleventh Amendment bars direct suits against a State or one of its agencies"). The immunity offered by the Eleventh Amendment can only be defeated by showing that a state has waived this protection or Congress has abrogated it. *Blackwood*, 7 F.3d at 1145. The Supreme Court has held that Congress did not intend to abrogate the states' Eleventh Amendment immunity when it enacted § 1983. *Will*, 491 U.S. at 66.

---

[13] The courts treat states, including state agencies, differently in suits seeking injunctive relief under § 1983, as well as under § 1985 and § 1986. *See Guesh v. N.C. Cent. Univ.*, 423 F. Supp. 2d 550, 560 (M.D.N.C. 2006) (§ 1983); *Bradley v. N.C. Dep't of Transp.*, 286 F. Supp. 2d 697, 702 n. 4 (W.D.N.C. 2003) (§ 1983); *Freeman & Bass, P.A., v. N.J. Comm'n of Investigation*, 359 F. Supp. 1053, 1060 (D.N.J. 1973) (§ 1985). In addition, municipalities are treated differently than states; they are deemed "persons" under § 1983 and are subject to suits for money damages under that statute. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

12

This court and other courts have held that the NCDC is an agency of the State of North Carolina. *Pope v. N.C. Dep't of Corr.*, No. 5:97-871-BO, 1998 U.S. Dist. LEXIS 9300, at *6 (E.D.N.C. 8 May 1998); *see also Pharr v. Garibaldi*, 252 N.C. 803, 808-09, 115 S.E.2d 18, 22-23 (1960) (holding that a suit against the "State Prison Department [the NCDC] . . . is essentially a suit against the State"); *Hamilton v. Freeman*, 147 N.C. App. 195, 204, 554 S.E.2d 856, 861 (2001) (noting that the NCDC is part of North Carolina's executive branch). Plaintiff himself admits in his original complaint that the NCDC "is a governmental department of the State of North Carolina." (Compl. ¶ 5). As an agency of the state, the NCDC is not subject to suit for money damages under § 1983. *See Pope*, 1998 U.S. Dist. LEXIS 9300, at *6; *see also Will*, 491 U.S. at 71. The court therefore lacks subject matter jurisdiction over plaintiff's § 1983 claim against the NCDC and it is recommended that this claim be dismissed pursuant to Rule 12(b)(1).[14]

### B.    Plaintiff's § 1985 and § 1986 Claims

Section 1985(3) provides to those injured by a conspiracy to deprive them of the equal protection of the laws a right of action against the conspirators. It reads in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purposes of depriving . . . any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws. . . . the party so injured may have an action for the recovery of damages . . . against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1986 extends liability to those with knowledge of the conspiracy:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985] . . . shall be liable to the party injured . . . for all damages. . . .

---

[14] Alternatively, dismissal could be pursuant to Rule 12(b)(6). The Fourth Circuit has not definitively determined whether dismissal on Eleventh Amendment grounds should be based on Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim. *Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (discussing the Fourth Circuit split in dismissing cases on Eleventh Amendment grounds under both Rule 12(b)(1) and Rule 12(b)(6)).

13

42 U.S.C. § 1986. The courts have held that the viability of a § 1986 claim is conditioned on the existence of a claim under § 1985; if the § 1985 claim is dismissed, the § 1986 claim falls with it. *Buschi v. Kirven*, 775 F.2d 1240, 1243 (4th. Cir. 1985) (holding that § 1985 is the predicate to a § 1986 cause of action).

The principles previously discussed with respect to a § 1983 claim also apply to claims under § 1985 and § 1986. Neither a state nor an agency of a state is a "person" under § 1985 and § 1986 in a suit for money damages, just as under § 1983. *See Coffin v. South Carolina Dept. of Soc. Servs.*, 562 F. Supp. 579, 585 (D.S.C. 1983) (holding that neither of the state agencies in question was "a 'person' within the meaning of 42 U.S.C. §§ 1985 and 1986"). Similarly, the immunity afforded by the Eleventh Amendment to a state and a state agency applies to § 1985 and § 1986 claims, just as it does to a § 1983 claim for money damages. *Id.*; *see also Coats v. N.C. Cent. Univ.*, No. 1:95-910, 1996 U.S. Dist. LEXIS 16159, at *10 (M.D.N.C. 30 Aug. 1996) (holding that § 1985 claims against a state entity are barred by the Eleventh Amendment); *Culler v. S.C. Dep't of Soc. Servs.*, No. 83-1394-O, 1984 U.S. Dist. LEXIS 20325, at *8-9 (D.S.C. 18 Jan. 1984) (same).

As discussed, the NCDC is an agency of the State of North Carolina. It is therefore not subject to suit under § 1985 and § 1986. The court accordingly lacks subject matter jurisdiction over these claims and it is recommended that they be dismissed pursuant to Rule 12(b)(1).

Alternatively, because the NCDC is not a "person" for purposes of § 1985 and § 1986, it cannot have participated in a conspiracy within the meaning of those statutes. Nor can the NCDC conspire with itself. *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1371 (4th Cir. 1989) (holding that a police department cannot conspire with itself under § 1985 and dismissal pursuant to Rule 12(b)(6) proper); *see also Buschi*, 775 F.2d at 1251-52 (applying intracorporate conspiracy

14

doctrine to bar claims). The NCDC also cannot be held vicariously liable under § 1985 for the torts of its employees based solely on the employment relationship. *See Woody v. Chesapeake Beach Park, Inc.*, 57 F.R.D. 525, 527-28 (D. Md. 1972). Based on these principles, plaintiff fails to state a claim against the NCDC under § 1985 and § 1986 upon which relief can be granted. It is therefore recommended that, in the alternative to dismissal under Rule 12(b)(1), these claims be dismissed pursuant to Rule 12(b)(6).[15]

## C. Plaintiff's State Law Claims

The purported state law claims in the amendment to the complaint include, in part, fraud, forgery, bad faith, malice, willful misconduct, and intentional infliction. (Am. to Compl. ¶¶ 15, 20(a)). Of these, only fraud, including forgery,[16] and intentional infliction constitute actual causes of action in the context of a case such as this, as opposed to aggravating circumstances that may entitle a plaintiff to punitive damages or other relief. Both fraud and intentional infliction are, of course, intentional torts. The remaining state law claim alleged by plaintiff is gross negligence. (*Id.* ¶ 19).

---

[15] The court does not adopt the related argument by the NCDC that plaintiff pleads insufficient facts to support his § 1985 and § 1986 claims for purposes of Rule 12(b)(6). The NCDC's argument appears to be based solely on the admittedly skeletal allegations in the amendment to the complaint and does not take into account the detailed allegations in the original complaint. The court believes that the detailed factual allegations in the original complaint are sufficient to meet the relatively low pleading standard plaintiff must meet as a *pro se* plaintiff. *See Leeke*, 574 F.2d at 115. The standard is even more clearly met if the EEOC charge materials attached to plaintiff's response to the dismissal motion are considered.

[16] It appears that plaintiff's fraud and forgery claims (Compl. ¶ 7(c); Am. to Compl. ¶¶ 6(4), 12) relate to an alleged act of forgery by another employee of the NCDC designed to obtain plaintiff's medical records. Forgery can be viewed as a species of fraud, and the court is therefore treating them together for purposes of this analysis. *See Cooper v. Floyd*, 9 N.C. App. 645, 648-49, 177 S.E.2d 442, 444-45 (1970). It is conceivable that plaintiff's allegations of forgery implicate rights he may have under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191. The court notes, however, that no private federal cause of action exists for a HIPAA violation and that plaintiff could not plausibly be deemed to be asserting a valid HIPAA claim. *Fields v. Charleston Hosp., Inc.*, No. 2:06-0492, 2006 U.S. Dist. LEXIS 60904, at *13-15 (S.D. W. Va. 15 Aug. 2006).

15

Plaintiff's fraud and intentional infliction claims are subject to the North Carolina common law doctrine of sovereign immunity. Sovereign immunity prevents a claim for relief from being brought against the state unless the state consents to the claim or waives its immunity. *Gen. Elec. Co. v. Turner*, 275 N.C. 493, 498, 168 S.E.2d 385, 389 (1969). North Carolina has not waived its immunity from intentional tort claims. *Nello L. Teer Co. v. N.C. State Hwy. Comm'n*, 265 N.C. 1, 9, 143 S.E.2d 247, 253 (1965). In addition, in its answer to the original complaint in this case, the NCDC asserted sovereign immunity as an affirmative defense. (Ans., "Ninth Defense," p. 5). Because, for reasons previously discussed, a claim against the NCDC as a state agency is deemed a claim against the state, the doctrine of sovereign immunity bars plaintiff from bringing his claims for fraud and intentional infliction in this court (or any other forum). It is therefore recommended that these claims be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

The State of North Carolina has consented to the assertion of claims against it for negligence, including gross negligence, but only in the North Carolina Industrial Commission. *See* N.C. Gen. Stat. §§ 143-291, *et seq.*; *see also Guthrie v. State Ports Auth.*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983). Therefore, this court also lacks subject matter jurisdiction over plaintiff's claim for gross negligence, and it is recommended that this claim be dismissed pursuant to Rule 12(b)(1).

The NCDC seeks dismissal of the intentional infliction claim on the alternative ground that plaintiff fails to make sufficient allegations to support the claim. The court agrees. To establish a prima facie case for intentional infliction of emotional distress, plaintiff must show that (1) defendant engaged in extreme and outrageous conduct (2) which was intended to cause plaintiff severe emotional distress and (3) which did in fact cause plaintiff severe emotional distress. *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992); N.C. Pattern Jury Inst.–Civil § 800.60. The

16

standard for extreme and outrageous conduct under North Carolina law is quite high, existing only "when a defendant's conduct exceeds all bounds usually tolerated by decent society." *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting William Prosser, *The Law of Torts*, § 12, p. 56 (4th ed. 1971)). The most extreme conduct alleged by plaintiff and revealed in the material extraneous to the pleadings is his being subjected on one occasion to repeated rounds of searches by a drug dog. (*See* Am. to Compl. ¶ 7(d)). This alleged conduct, however unsatisfactory it might be, does not rise to the level required for an intentional infliction claim. It is therefore recommended that plaintiff's claim for intentional infliction be dismissed on the alternative ground of failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).[17]

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the NCDC's motion to dismiss be GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's claims for money damages under § 1983, § 1985 and § 1986, and state law against the NCDC, as set out in the amendment to the complaint (DE #24), should be dismissed.

---

[17] The court has considered, but declines to adopt, the other alternative grounds for dismissal of plaintiff's claims. For example, the NCDC argues that all of plaintiff's state law claims (as well as his federal claims) in the amendment to the complaint are time barred because the amendment was not filed until January 2007, more than three years after the claims purportedly accrued in August 2003 (*see* Am. to Compl., p. 4 ¶ 10). (Def.'s Mem., pp. 8-9, 11-12). However, aside from any other considerations, the amendment appears to relate back to the time of filing of the original complaint in April 2006, prior to the expiration of the alleged three-year limitations period, because the claims alleged in the amendment arose out of the conduct and occurrences set forth in the original complaint. *See* Fed. R. Civ. P. 15(c)(2). The court also does not agree that plaintiff has failed to meet the pleading requirements of Rule 12(b)(6) for his fraud and gross negligence claims when the detailed factual allegations in the original complaint are considered with the allegations in the amendment to the complaint. These requirements are even more clearly met if the EEOC charge materials attached to plaintiff's response to the dismissal motion are considered, including specifically the 16 August 2004 letter from plaintiff to Dr. Pages (DE #34-2, first page).

17

2. Plaintiff's claims under Title VII and § 1981, and for retaliation, as set out in the original complaint (DE #1), should not be deemed to have been waived by plaintiff and the case should proceed on such claims.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This the 1st day of August, 2007.

James E. Gates
United States Magistrate Judge